IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEIDI ROSE,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:15-cv-02226-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Heidi Rose brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI). The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed an application for Title II disability insurance benefits on June 12 2014, and also protectively filed a Title XVI application for supplemental security income on December 5, 2014. Both applications allege disability beginning February 10, 2014. Tr. 10. The claim was denied initially on November 5, 2014, and upon reconsideration on February 10, 2015. *Id*. Upon claimant's request, a hearing was held on August 3, 2015, and on August 11, 2015 the ALJ issued a decision denying plaintiff. Tr. 23. The Appeals Council denied the request for review on making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Aukland v. Massanari,* 257 F.3d 1033, 1034-35 (9th Cir. 2000) (when evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision). A reviewing court, however,

"cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). A court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995). *See also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence).

## **DISCUSSION**

The Social Security Administration uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity, age, education, and work experience. *Id.*

Here, the ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset date of disability of February 10, 2014. Tr. 12. At step two, the ALJ found Plaintiff suffered from two severe impairments: bowel incontinence and depression. *Id.* At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform work at all exertional levels but with the following non exertional limitations:

> "the individual would be limited to occasionally climbing ramps and stairs; occasionally climbing ladders and scaffolds; balancing would be limited to the frequent level; stopping, crouching, and crawling would be limited to the occasional level; the individual would be limited to simple tasks, and making simple work related decisions, and the individual would be limited to tolerating few changes in a routine work environment, equating to repetitive tasks day to day, whether working by herself or with coworkers would require the same sort of environment without variability as to working with different coworkers day-to-day; the individual would also need close proximity to a bathroom which is classified as working indoors and being roughly within a two-minute walk of a bathroom."

Tr. 15.

Given these restrictions, and relying on the vocational expert's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a housekeeper (DOT 323.687-010, light, SVP 2), and hospital cleaner (DOT 323.687-010, medium, SVP 2). Tr. 21. The ALJ did not make an alternative finding in step five.

## I. Plaintiff raises three issues on appeal

Plaintiff claims that the ALJ erred in the following:

1. The ALJ relied upon VE testimony that did not comport with the Dictionary of Occupational Titles, SSR 83-12, and SSR 96-9p.

2. The ALJ failed to provide clear, convincing and specific reasons to support the ALJ's finding that the Plaintiff was not credible.

3. The ALJ failed to find that Plaintiff suffered a severe hand impairment.

## II. Plaintiff's RFC: frequency, intensity, and duration

At step two the ALJ found that Plaintiff suffers from bowel incontinence, but ultimately found that the incontinence would not prevent Plaintiff from performing fulltime work so long as

Plaintiff had ready access to a restroom, as accounted for in the residual functional capacity. Tr. 17.

Plaintiff testified at her hearing that she had bowel incontinence one to five times a day where the need to use the bathroom was immediate. These breaks lasted from 10 to 30 minutes. Tr. 16, 34, 38. Plaintiff argues the frequency, intensity, and duration of her incontinence impacts Plaintiff's ability to work a forty hour work schedule or its equivalent. Pl.'s Br. 5-7, ECF No. 19, *citing* SSR 96-9p. Most unskilled jobs, whether light or sedentary, do not permit a sufficient break from the workplace to allow the worker to sit or stand at will. *Id.*, *citing* SSR 83-12. Plaintiff points to the VE testimony that a single unscheduled bathroom break would preclude the performance of the jobs identified at step four. Tr. 61. Plaintiff argues that the need to be able to access a bathroom within two minutes at all times throughout the workday necessitates the need for unscheduled breaks and that the ALJ erred by failing to include such breaks in the RFC finding.

## A. ALJ findings as to credibility

Because of Plaintiff's minimal treatment history, the ALJ discounted Plaintiff's testimony regarding the frequency, intensity, and duration of her symptoms. Tr. 16. The ALJ found that, although Plaintiff reported her incontinence began in 2006, she saw a proctologist a single time in July of 2012, and was able to continue working for another eighteen months. Tr. 16, 513-16. Although the proctologist recommended a bulking agent and further testing, Plaintiff did not follow through on the treatment recommendations. Tr. 16, 412, 516. She did not seek additional evaluation or treatment by a proctologist or other specialist. Tr. 16.

The ALJ discounted Plaintiff's credibility because her minimal treatment history did not support her allegation of frequency, intensity and duration. *Tommasetti v. Astrue*, 533 F.3d 1035,

1039 (9th Cir. 2008) (ALJ may consider many factors in weighing a claimant's credibility including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.")

Plaintiff argues that the amount of treatment does not undermine Plaintiff's credibility, because she was unable to afford to follow up on effective treatment. Pl.'s Br. 8-9, ECF No. 19; Tr. 16. SSR 82-59 provides that an individual's failure to follow prescribed treatment will be generally accepted as "justifiable" and would not preclude a finding of "disability" if the individual is unable to afford prescribed treatment.

The ALJ also discounted Plaintiff's testimony because it was inconsistent with her reports to her healthcare providers. Tr. 17. Plaintiff testified that she has to plan extensively what she eats to avoid episodes of incontinence. For example, she testified that she did not eat for 24 hours prior to the hearing and she goes without eating for 12 hours prior to shopping. *Id*. She reported needing to take unpredictable bathroom that range in time from ten to thirty minutes. None of this, however, was reported to her health providers. Tr. 17, 34, 48. Finally, her providers did not observe her to be incontinent or in distress during office visits and she denied using protective garments such as adult diapers. Tr. 17, 37.

**B. Medical history**

Plaintiff reported her incontinence began in 2006 following the surgical resection of a portion of her colon. On June 14, 2012, Plaintiff met with a medical provider (Dr. Inkeles) and reported incontinence issues related to the procedure for the first time. Tr. 408. She had never discussed this with her prior physicians. *Id*. Dr. Inkeles referred Plaintiff to a specialist. *Id*. She saw a proctologist for her fecal incontinence in July or August 2012. Tr. 16, 513-16.

When she met the proctologist in August of 2012, Plaintiff reported to have, "very irregular bowel patterns intensity" that day or "5 or 6 loose bowel movements," and reported generally fecal incontinence *at least weekly*. Tr. 513. Her stools can be soft or very hard and about 30% of the time she requires manual digital disimpaction. *Id*. Fecal incontinence is marked as a new assessment. The physician discussed the symptoms with Plaintiff and suggested that Plaintiff proceed with further evaluation and testing. Tr. 516. The specialist recommended Plaintiff take a bulking agent such as Citrucal powder daily. *Id*. Plaintiff did not follow up with further evaluation, testing, or the recommended treatment, a fiber powder mix readily available in most grocery stores.

A review of Plaintiff's medical records demonstrates that Plaintiff's fecal incontinence has remained unchanged and has not deteriorated since at least August 2012. On January 27, 2015, Plaintiff visited with her primary care physician, and presented with and discussed several medical issues. Tr. 518. The medical record from that visit assesses Plaintiff's fecal incontinence as "unchanged." Tr. 524. During a medical visit on June 8, 2015, the physician reviewed and noted her fecal incontinence to be unchanged. Tr. 544.

## C. Failure to treat, SSR 82-59

While Plaintiff has complained of fecal incontinence since June 2012, Plaintiff has made no discernable effort to treat it. Plaintiff's minimal treatment history for her fecal incontinence undermines her credibility, especially in contrast to medical records that demonstrate that she is willing and capable of seeking out treatment from specialists other health concerns arise. Citrucal powder, which was the recommended treatment, is readily available for treating diarrhea and soft stools. While Plaintiff complains of 1 to 5 or 6 loose bowel movements a day, she reported to her medical provider fecal incontinence generally only "*at least weekly*." Tr. 513.

SSR 82-59 dictates that an individual with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment, unless there is a justifiable cause for the failure to follow such treatment. Plaintiff has not shown financial inability to take the recommended fiber powder or to seek treatment while she was employed from August 2012 through February 2014. Because of Plaintiff's minimal treatment history, the ALJ had substantial evidence to discount Plaintiff's testimony regarding the frequency, intensity, and duration of Plaintiff's incontinence as alleged. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may consider many factors in weighing a claimant's credibility including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Because the ALJ had substantial evidence to discount Plaintiff' testimony regarding the frequency, intensity, and duration of her fecal incontinence, the ALJ was correct to conclude that her incontinence would not prevent Plaintiff from performing fulltime work so long as she had ready access to a restroom, as accounted for in the residual functional capacity. Tr. 17.

### III. Plaintiff's depression

The ALJ provided specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of her depression. Tr. 17; *Brown-Hunter v. Colvin*, 806- F.3d 487, 493 (9th Cir. 2015). The lack of objective medical evidence of limitations and minimal treatment history discredits Plaintiff's testimony. Prior to her alleged onset date, Plaintiff was prescribed an antidepressant. Tr. 17, 450. Sometime after the alleged onset date, in mid-2014, Plaintiff reported being depressed. Tr. 17, 477. She then reported good results after four counseling sessions in early 2015. Tr. 17, 531. Since the alleged onset of disability, Plaintiff has not been prescribed

any medication for depression and has not sought additional mental health treatment of any kind. Tr. 17, 521-22.

Plaintiff's daily activities also contradicted her alleged symptoms of depression. Tr. 18. Plaintiff engaged in normal daily activities. She cared for a pet, prepared meals, performed chores, drove, shopped and handled money. Tr. 18, 230-33. Plaintiff reported socializing with friends. Tr. 17, 241. Plaintiff's friend described her as being active in gardening, visiting friends, crafting, going to garage sales, and using a computer. Tr. 18, 241-43. Plaintiff also testified to riding a horse during the relevant period. Tr. 18, 47.

### IV. Plaintiff's hand impairment

The ALJ properly found that Plaintiff did not have a severe hand impairment. Tr. 13. X-rays showed only mild degenerative changes. Tr. 12, 520. In June 2015, Dr. Inkeles described Plaintiff as having only slightly decreased motor strength. Tr. 13, 543. Plaintiff also reported hobbies that require extensive use of her hands such as working on crafts, gardening, using a computer, and learning to sew. Tr. 18, 237-38.

### V. Dr. Inkles

The ALJ properly weighed the opinion of treating physician Dr. Inkeles. Tr. 19-20. Dr. Inkeles lacked an ongoing treatment relationship with Plaintiff during the relevant period prior to the time he issued the opinion. Tr. 20. He did not treat Plaintiff from November 2013 through January 2015, and he provided his medical source statements in February 2015, only a month after seeing Plaintiff for the first time after an extended break. *Id*. Dr. Inkeles appeared to rely on Plaintiff's subjective allegations. *Id*. While Dr. Inkeles opined that Plaintiff would miss six days of work a month, Plaintiff did not seek a healthcare provider on a monthly basis, or require hospitalization or aggressive treatment during the relevant period. Tr. 19.

Dr. Inkeles' treatment notes did not support his opinion regarding Plaintiff's limitations. Tr. 19; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). Dr. Inkeles observed only a slight decrease in arm strength and he was not sure if Plaintiff's hand weakness was due to pain or actual motor weakness. Tr. 13, 19. Dr. Inkeles thought that Plaintiff's neck pain and related symptoms would respond to cervical traction. Tr. 13. A month later, Plaintiff reported neck pain relief by cervical traction. Tr. 13. X-rays showed only mild degenerative changes in Plaintiff's cervical spine, lumbar spine, and hands. Tr. 12, 518-20. Plaintiff did not seek treatment for musculoskeletal pain between late 2013 and 2015. Tr. 13.

## VI. VE Testimony and the Dictionary of Occupational Titles

Plaintiff argues that most unskilled jobs, whether light or sedentary, do not permit a sufficient break from the workplace to allow the worker to sit or stand at will. SSR 83-12. The VE testified that requiring "on a consistent basis even one additional bathroom break other than the standard breaks . . . that would range from 10 minutes to one half an hour" would preclude employment in the jobs identified.. Tr. 61. Plaintiff argues that the need to be able to access a bathroom within two minutes at all times throughout the workday necessitates the need for unscheduled breaks. Plaintiff asserts that the ALJ erred by ignoring the effect of taking unscheduled breaks and by failing to include the need for unscheduled bathroom breaks in the RFC finding. The ALJ was required to specify how often Plaintiff would require bathroom breaks due to fecal incontinence, and its impact on Plaintiff's ability to work a forty hour work schedule or its equivalent. SSR 96-9p.

Plaintiff argues that the VE identified various jobs, but did not reduce their numbers to accommodate the need for bathroom breaks. While the ALJ inferred that the VE's testimony was based on his training and experience (Tr. 23), SSR 00-4p requires the ALJ to perform an inquiry

as to whether the VE's testimony is consistent with the D.O.T. The ALJ is not allowed to infer; the VE must offer an explanation. *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007).

Because the ALJ concluded that Plaintiff's incontinence was not as severe as alleged, the ALJ did not include a limitation to unscheduled breaks lasting up to 30 minutes in the RFC. Tr. 15. The ALJ concluded that an ability to use the restroom for a normal length of time as needed is sufficient. The VE identified jobs available in the national economy where an individual can work in proximity to a restroom. The VE testified that an individual with Plaintiff's RFC could perform the occupations of housekeeper and hospital cleaner, as well as the representative occupations of janitor and laundry worker. Tr. 21-23, 59-60. The DOT does not address access to restroom facilities. There is no inconsistency between the description for the jobs identified and the VE's testimony.

## **CONCLUSION**

Because substantial evidence exists within the record as a whole to support the Commissioner's decision, this Court AFFIRMS the Commissioner's Decision.

IT IS SO ORDERED.

DATED this 7th day of September, 2017.

　　　　/s/Michael J. McShane　　　　
　　　　　Michael J. McShane
　　　　United States District Judge